NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 22, 2015[*]
Decided February 4, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 15-1819

| | |
|---|---|
| LIANNE R. SUMMERS, | Appeal from the United States District |
|     *Plaintiff-Appellant*, | Court for the Western District of Wisconsin. |
| | |
| *v.* | No. 12-cv-22-wmc |
| | |
| CAROLYN W. COLVIN, | William M. Conley, |
| Acting Commissioner of Social Security, | *Chief Judge*. |
|     *Defendant-Appellee*. | |

**O R D E R**

Lianne Summers appeals from a judgment upholding the Social Security Administration's denial of her applications for Disability Insurance Benefits and Supplemental Security Income. See 42 U.S.C. § 405(g). Summers, who is 44, claimed that she is disabled by chronic pain in her back and extremities, but an administrative law judge disbelieved her testimony about the extent of her limitations and concluded that

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. See FED. R. APP. P. 34(a)(2)(C).

she has the residual functional capacity to perform available jobs. On appeal Summers challenges the ALJ's finding that she does not suffer from a listed impairment, as well his assessments of her credibility and residual functional capacity. Because the ALJ's conclusions are supported by substantial evidence, we affirm the judgment.

While she was living in Las Vegas, Nevada, Summers developed severe back pain following a car accident in June 2004. As detailed in the written decisions of the ALJ and the district court, see *Summers v. Colvin*, No. 12-cv-22-wmc, 2013 WL 6564451 (W.D. Wis. Dec. 13, 2013), Summers sought treatment from several doctors during the months following the accident but stopped when she moved out-of-state in March 2005. In 2006 she returned to her home state of Wisconsin; she applied for benefits in September 2009.

In her applications Summers alleged that she suffers from back pain and Crohn's disease, though she has never been diagnosed or treated for the latter condition. Her applications initially were denied in December 2009, but afterward she sought further medical treatment through August 2010. In addition to complaining about lower-back pain, she told health-care providers (and later the ALJ) that she experiences numbness, tingling, and pain in her extremities, hips, upper back, and shoulders. Her physicians attributed these symptoms to fibromyalgia and chronic pain syndrome, but Summers insisted that they result from Lyme disease, despite the fact that she had tested negative for that disorder. Summers also reported to medical providers that she suffers from rheumatoid arthritis and told the ALJ that she has carpal tunnel syndrome, but tests also ruled out both of these conditions.

After conducting a hearing in March 2011, the ALJ applied the required five-step analysis, see 20 C.F.R. §§ 404.1520, 416.920. At Step 1 the ALJ found that Summers had not engaged in substantial gainful activity since her accident, and at Step 2 he identified her impairments as obesity, fibromyalgia, and disorders affecting her back, muscles, ligaments, and fascia. At Step 3 the ALJ concluded that Summers does not have an impairment or combination of impairments that meets or equals the severity of a listed impairment for presumptive disability. And at Steps 4 and 5 he concluded that she is not capable of performing her past work, but she does have the residual functional capacity to perform jobs available in the national economy. Specifically, the judge found that she can perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), and simple, routine, and repetitive tasks requiring frequent (but not constant) fine manipulation. He did not believe her testimony about the intensity, persistence, and limiting effects of her symptoms and noted that both of the state-agency doctors who were consulted also thought that Summers could perform at least sedentary work. The

Appeals Council declined to review the ALJ's decision, making it the final word of the Commissioner. See *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

In this court Summers first challenges the ALJ's credibility finding, which we must accept unless it is "patently wrong." See, *e.g.*, *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). She critiques the ALJ's use of the circular boilerplate we have criticized frequently, see, *e.g.*, *Goins v. Colvin*, 764 F.3d 677, 681 (7th Cir. 2014); *Bjornson v. Astrue*, 671 F.3d 640, 644–46 (7th Cir. 2012), but that unhelpful language is harmless when an ALJ's written decision otherwise explains the adverse credibility finding, see *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2013). And that is the situation here: What follows the boilerplate is a thorough analysis of Summers's statements and the medical evidence.

Summers accuses the ALJ of making a different mistake, however: she asserts that he found her not credible solely because the objective medical evidence does not explain her pain. See *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015). If that were true, it would be a problem, but a careful look at the record shows that it is not. The ALJ relied on more than a lack of substantiation in the medical evidence. He addressed Summers's history of conservative treatment, the assessments of the consulting physicians, the lack of objective verification of her difficulties performing daily activities, and inconsistencies between her reported limitations and doctors' findings on examination. The ALJ also noted one doctor's report of Summers's apparent eagerness to receive benefits.

Summers responds that the ALJ should not have focused on the several-year hiatus in treatment after she left Las Vegas or her decision to stop treatment in 2010, since the ALJ did not first explore her reasons for suspending treatment. An ALJ must inquire into the claimant's reasons before relying on the absence of medical treatment to support an adverse credibility finding. See *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008). But the ALJ did not draw an adverse inference about Summers's credibility from any lack of treatment. Rather, the ALJ's mention of the gaps in treatment was related to his point that the treatment Summers did receive was conservative. And even if the ALJ had concluded that the gaps undermined Summers's credibility, she has not explained how she was harmed by the ALJ's failure to explore her reasons. See *Spiva v. Atrue*, 628 F.3d 346, 353 (7th Cir. 2010) (noting that doctrine of harmless error applies to Social Security cases). Summers's explanation that she did not have insurance or reliable transportation at the time of her hearing in 2011 does not address her circumstances during the period from 2005 to 2010 or why she was unable to seek care at the free clinic near her in Marshfield, where she resumed treatment in 2010.

Summers also argues that the ALJ erred in concluding that she had exaggerated her limitations and impairments, but there was evidence to support this assessment. As the ALJ pointed out, Summers consistently described herself as having impairments that doctors had not diagnosed. Summers testified at her hearing that she had been diagnosed with Lyme disease despite the fact that she had tested negative for that condition and an infectious-disease doctor had ruled it out as the cause of her pain. She also testified that she had been diagnosed with carpal tunnel despite normal EMG results. And she told doctors that she had a history of rheumatoid arthritis dating to 2005, but that claim is yet another that testing debunked. Moreover, as the ALJ noted, the doctors' physical examinations, which consistently revealed normal muscle strength and a lack of neurological problems, contradicted Summers's stated limitations.

Summers further maintains that it was error for the ALJ to note her apparent "eagerness" to receive benefits, a point mentioned by Dr. Daniel Sa. But this argument, too, is unconvincing. Given the lack of findings after Dr. Sa's examination, and the timing of the statement—after Summers initially had been denied benefits, and at the immediate outset of the appointment—it was not patently wrong for the ALJ to view her statement that she "needs to go on disability" as diminishing her credibility.

Summers next argues that the ALJ's determination at Step 3 that her conditions did not meet or equal a listed impairment under 20 C.F.R. Pt. 404, Subpt. P, App. 1, was too cursory. This is an argument that she raised in the district court, but it was apparently overlooked. On this point the ALJ wrote, "The claimant's back disorders fail to satisfy the requirements of applicable listing 1.04 because there is no medically documented evidence of nerve root compression, spinal arachnoiditis, or spinal stenosis."

Had this been all the ALJ said, it would be problematic for its brevity. See *Minnick v. Colvin*, 775 F.3d 929, 935–36 (7th Cir. 2015). But we read the ALJ's decision as a whole, see *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004), and later the ALJ addressed Summers's evidence more thoroughly and explained why the record did not establish the criteria required to satisfy Listing 1.04.

Finally, Summers challenges the ALJ's conclusion that she had the residual functional capacity to perform sedentary work. She contends that it was improper for the ALJ to place great weight on Dr. Philip Cohen's assessment because he did not treat her and he was consulted before much of the treatment she received in 2010. But no treating source gave an opinion about Summers's functional limitations. The only other

medical opinion on point came from Dr. Patricia Bush, the other state-agency consultant, who concluded that Summers had even fewer limitations. None of her treating physicians ever opined that Summers was unable to work. It was not error for the ALJ to rely on the uncontradicted expert opinion of Dr. Cohen, despite the fact that he never treated Summers himself. See *Filus*, 694 F.3d at 867; *Cass v. Shalala*, 8 F.3d 552, 555 (7th Cir. 1993).

AFFIRMED.