In the

# United States Court of Appeals

### For the Seventh Circuit

No. 15-2352

KATHY ANN STARK,

*Plaintiff-Appellant,*

*v.*

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security Administration,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 14-cv-00108 — **Joseph S. Van Bokkelen**, *Judge.*

ARGUED DECEMBER 16, 2015 — DECIDED FEBRUARY 22, 2016

Before MANION, KANNE, and WILLIAMS, *Circuit Judges.*

MANION, *Circuit Judge.* Kathy Stark, aged 60, applied for disability insurance benefits, primarily asserting that she is disabled by degenerative disc disease that causes severe back, neck, and hip pain. The ALJ denied her application largely on the basis that she did not testify credibly about the severity of her pain. We agree with Stark that the credibility

analysis was flawed and remand the case to the agency for further proceedings.

## I. BACKGROUND

Before her back pain forced her to stop working in 2009, Stark had worked for over ten years as a yard driver, moving pick-up trucks at a General Motors plant from the assembly line to a storage area. She earned about $38,000 per year, presumably with benefits.

Her back pain started in 2000, when she underwent her first of three surgeries. Her orthopedic surgeon diagnosed her with degenerative disc disease and performed a lumbar fusion and procedures to widen her nerve pathways. Stark experienced persistent and continuous pain in her left leg, and three months later, she was diagnosed with nerve root irritation and moderate-to-severe spinal stenosis. Stark underwent a second surgery to reduce nerve compression in her spinal canal; the procedure showed an irritable nerve root. Her pain did not abate. An electrodiagnostic study showed results consistent with radiculopathy. So Stark underwent a third surgery, another lumbar fusion. She also was prescribed daily narcotic pain relievers.

At follow-up appointments, her orthopedic surgeon found that Stark's fusion had healed well, but he opined that she had a neuropathic root and predicted that "she will still always have a component of the neuropathic leg pain." In November 2002, the surgeon believed that any improvements in her leg pain would likely level off within a year. By late 2004, he did not believe that any other surgical options would alleviate her pain.

Over the next few years Stark underwent numerous non-surgical treatments to alleviate the pain radiating from her nerve damage. For example, she received a series of epidural spinal injections and underwent a nerve root block. Meanwhile, she continued on a regimen of Neurontin, Darvocet, Celebrex, and physical exercises. In late 2007 she began a physical therapy program to treat her lumbar pain. But she still experienced lower back pain on lumbar-flexion exercises after eight sessions of therapy and another epidural injection, so her physical therapist recommended follow-up with a physician. Her family physician prescribed three injections of local anesthetics in her spine in 2008, which Stark said offered short-term pain relief in her mid-upper back. The physician added Oxycodone and Avinza to her medication regiment, but Stark's pain control was "fair-to-poor." The family physician opined that her chronic low-back pain could be due to lumbar disc disruption, a diseased nerve root, irritation of the lumbar spine, or sacroiliac joint dysfunction.

In connection with her application for benefits, Stark was examined in 2009 by a state-agency doctor. He opined that she was capable of engaging in sedentary-to-light physical demand work, based on his physical exam of her and review of her medical history. Stark reported very severe pain in her back that radiated down her left leg and prevented her from sitting for more than two hours. Despite Stark's description of pain, the state doctor assessed that Stark could do light physical demand activities based on her full range of motion and ability to squat, kneel, and walk. A state-agency medical consultant also reviewed Stark's file, and estimated that Stark occasionally could lift or carry 20 pounds and sit for a total of about 6 hours in an 8-hour day.

At a hearing before an ALJ in late 2012, Stark testified to the severity of her pain. She reported a "tremendous amount of pain every day," which had worsened steadily over the past three years, and she stopped working because of it. It is important to note here that for many years she continued to work at General Motors in spite of the increasing pain and many medical and physical treatments. At the hearing, she rated her upper and lower back pain at a 7 out of 10. When she tried to hold her 7-pound grandson for more than a few minutes, she said that her back erupted in pain and she could not move the next day. She rated her right hip pain at a 6 or 7 out of 10. She felt like a "volt of electricity" goes through her leg, making her toes throb. Most of her days were spent easing her pain with ice packs or heat therapy, and alternating lying prone on the couch with performing small tasks like doing laundry. Dinner preparation extended for hours because she could not stand for more than 20 minutes. She continued to take Neurontin and Aleve, which she said helped ease her pain. She could no longer take narcotic pain relievers because of a hepatitis C diagnosis that arose out of a tainted blood transfusion.

A vocational expert testified that Stark could perform her past work as a driver if limited to the extent described by the ALJ: able to lift 20 pounds occasionally and 10 pounds frequently; able to sit, stand, or walk for 6 hours each in an 8-hour workday; occasionally able to climb, balance, stoop, kneel, crouch, crawl; and no limits on pulling or pushing. In contrast to Stark's testimony about her present need for frequent breaks, the expert testified that an employer would tolerate two 15-minute breaks daily and fewer than 2 to 3 absences per month.

The ALJ denied benefits using the 5-step framework. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found that Stark had not engaged in substantial gainful activity since her alleged onset in October 2009 (Step 1); she suffered "back pain status post remote fusion" and hepatitis C, both severe (Step 2); and her impairments, individually or in combination, did not satisfy a listing for presumptive disability because her back impairments had not resulted in nerve root involvement, sensory or reflex loss, spinal arachnoiditis, or an abnormal gait (Step 3). At Step 4 the ALJ rejected Stark's account of disabling limitations. Despite noting that she had been treated with medication, physical therapy, joint injections, chiropractic therapy, and lumbar fusions, the ALJ concluded that "the objective evidence does not substantiate the extreme symptoms and limitations to which she testified."[1] The ALJ acknowledged that she experiences "some symptoms," but her testimony regarding daily activities "demonstrates a level of daily function not inconsistent with light work activity." Finally at Step 5 the ALJ agreed with the vocational expert that she could perform her past work as a driver.

## II. ANALYSIS

Stark mounts a three-pronged challenge to the ALJ's adverse credibility finding. She first argues that at Step 4 the ALJ misconstrued her testimony about the intensity of her

---

[1] The ALJ did not mention Stark's inability to ingest narcotic pain relievers because of the hepatitis C. However, both attorneys brought it up at oral argument, and at this juncture she apparently is unable to use certain pain relief medicines.

pain, the extent of her daily activities, and her need for fre-
quent periods of rest.

We agree with Stark that the ALJ's finding that Stark's
own testimony supports the residual-functional-capacity as-
sessment is patently wrong. The ALJ inexplicably failed to
consider objective evidence that buttressed Stark's testimony
of disabling pain. This evidence included the nature of
Stark's diagnoses of radiculopathy and degenerative disc
disease, evidence of prescriptions for strong pain medica-
tions, epidural injections, multiple surgeries, and physical
therapy. The ALJ cursorily mentioned Stark's treatments,
but she did not consider how the treatments relieved Stark's
pain. *See* 20 C.F.R. § 404.1529(c)(3)(v), (vi) (factors relevant to
severity of pain include treatment for pain relief and other
measures to relieve pain, like lying flat on the back). Nor did
the ALJ consider the conclusion of Stark's treating physician
that she always will have neuropathic leg pain, which could
account for her complaints of pain, or her degenerative disc
disease, which could account for her pain progressively
worsening. Even if the ALJ thought that the objective evi-
dence was insufficient, pain alone can be disabling, *Carradine
v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004), and Stark testi-
fied that she is limited by her pain. Testimony of severe pain
cannot be disregarded simply because it is not supported by
objective medical evidence. *See Hall v. Colvin*, 778 F.3d 688,
691 (7th Cir. 2015); *Pierce v. Colvin*, 739 F.3d 1046, 1049–50
(7th Cir. 2014) ("Pain can be severe to the point of being dis-
abling even though no physical cause can be identified …").

Stark's persistence in struggling through household
chores despite her pain does not mean, as the ALJ extrapo-
lated, that she can manage the requirements of the work-

place. *See Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010); *see also Engstrand v. Colvin*, 788 F.3d 655, 661 (7th Cir. 2015). We have repeatedly rejected that reasoning as "naïve," *see Hughes v. Astrue*, 705 F.3d 276, 278 (7th Cir. 2013), because a person performing chores has flexibility in scheduling, can receive help, and is not held to a minimum standard of performance, unlike an employee. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).

And Stark's need for frequent breaks is *not* consistent with light work activity, also contrary to the ALJ's finding. *See, e.g., Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) (criticizing ALJ's reliance on claimant's ability to perform household tasks because inability to get through the day without lying down every hour does not indicate ability to work even sedentary job). Stark testified that she presently requires long breaks between tasks, uses extra time to complete short tasks, and experiences immobilizing pain for a full day after holding her 7-pound grandson. But the ALJ arrived at an RFC that presumes that Stark could take only two fifteen-minute breaks daily, perform tasks 85% of the time, and frequently lift 10 pounds. Thus Stark's testimony reflects that she *cannot* do her past job.

Stark's second challenge to the adverse credibility finding rests on the ALJ's use of language that this court routinely has condemned as "meaningless boilerplate" and "backwards" analysis. *See Bjornson*, 671 F.3d at 645; *Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011); *Parker v. Astrue*, 597 F.3d 920, 921–22 (7th Cir. 2010). The ALJ used boilerplate language to find that Stark's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but her "statements concerning the intensity,

persistence and limiting effects of these symptoms are not entirely credible." Use of boilerplate is not automatically ground for remand, *see Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014), but it captures a deeper problem in the ALJ's analysis: the ALJ based her credibility finding on her finding about Stark's ability to work, but a proper assessment requires the reverse. A finding about Stark's ability to work depends on the credibility of her statements about severe pain. *See Bjornson*, 671 F.3d at 645. The ALJ *first* assessed Stark's residual functional capacity with postural, carry and lift, and stand and walk restrictions that the ALJ opined would accommodate Stark's chronic back pain. And only *then* did the ALJ assess and discredit Stark's testimony about her extreme back pain and inability to sit for extensive periods.

Stark's third challenge to the credibility finding rests on the ALJ's disregard for her work history. Stark points out that she had a long, steady work history, and that she earned a much greater monthly income (and presumably other benefits like health insurance) while working than the payment benefits she would receive under disability. This work history, says Stark, shows that she is not a malingerer; she suffered through pain and operations to continue working and earning a good income. Although not mentioned, we could probably assume that she also received the benefits of good medical benefits at GM.

An ALJ is not statutorily required to consider a claimant's work history, but "a 'claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.'" *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015) (quoting *Rivera v. Schweiker*, 717 F.2d

719, 725 (2d Cir. 1983)). In assessing Stark's credibility about the disabling effects of her pain, the ALJ should have acknowledged Stark's efforts to continue work while experiencing significant pain and undergoing numerous surgeries and other treatments to relieve it. *See Pierce*, 739 F.3d at 1051 (criticizing ALJ for failing to consider claimant's "dogged efforts" to work in deciding claimant's credibility); *Flores v. Massanari*, 19 F. App'x 393, 404 (7th Cir. 2001) (criticizing ALJ for failing to acknowledge claimant's solid work history of 13 years).

## III. CONCLUSION

We REVERSE the district court's judgment and REMAND this case to the Commissioner for further proceedings.