NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 6, 2018
Decided July 11, 2018

**Before**

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 18-1369

| | |
|---|---|
| ALAN J. BEST,<br>　　　*Plaintiff-Appellant*,<br><br>　　　*v.*<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br>　　　*Defendant-Appellee*. | Appeal from the United States District Court for the Northern District of Indiana, Fort Wayne Division.<br><br>No. 1:17-CV-23-TLS<br><br>Theresa L. Springmann,<br>*Chief Judge*. |

# O R D E R

An administrative law judge denied Alan Best's application for disability insurance benefits after finding that although he suffered from back pain, diabetes, and mental-health problems, he was not entirely credible about his symptoms and could still perform light work with some limitations. Because substantial evidence supports the ALJ's decision, we affirm the judgment.

Best, born in 1963, was abused and neglected by his alcoholic mother throughout his childhood. She made Best and his brother sleep in their unheated garage and did not feed them regularly. When Best was young, two of his brothers raped his sister and one

of his brothers attempted suicide. As soon as he was old enough, Best left home and joined the military. He was deployed and endured additional traumatic experiences.

After two years in the military, Best returned to civilian life, and he worked in construction until the late 1990s when he had an accident at work and required several fusion surgeries on his back and neck. Unable to return to construction work, he then earned a master's degree in teaching and worked as a special-education teacher for more than a decade. But after a period of improvement, the pain in his neck and back returned, so he tried increasingly strong pain medications, a spinal-cord stimulator, and anti-inflammatory and numbing injections, all to no avail. Best also struggled with other chronic health problems, including diabetes, hypertension, and carpal tunnel syndrome. Best started going to therapy for anxious feelings and panic attacks in 2011, though he explained that these symptoms started after his first wife passed away in 1987. At his initial assessment, his therapist diagnosed him with posttraumatic stress disorder.

Best stopped working in May 2013 because his pain and anxiety were overwhelming. He then applied for disability insurance benefits, and his application was denied initially and on reconsideration. In connection with his application, two state-agency doctors reviewed the record and concluded that his back problems, hypertension, and anxiety were severe impairments. But both doctors found that Best could perform a limited range of light work. Best was also examined by a psychiatrist, who concluded that he had severe depressive disorder, generalized anxiety disorder, and panic disorder.

At a hearing before an ALJ in January 2015, Best testified that he was unable to work because of his incomplete recovery from his back and neck injuries. He estimated that he could stand for only one to two minutes and walk for only three to four minutes. He added that he suffered from anxiety and depression because of his past experiences, and that he had about five "bad" days every month where he could not do anything.

The ALJ asked a vocational expert to consider a person who—subject to certain positional limitations—could lift 20 pounds occasionally and 10 pounds frequently, and sit, stand, and walk for six hours at a time. The vocational expert opined that someone with those limitations could perform Best's past work but not if his concentration was also moderately impaired. The expert added that a person with such limited concentration could perform other light work even if he could not be expected to perform the same task for more than two hours.

The ALJ applied the five-step analysis in 20 C.F.R. § 404.1520(a)(4) and determined that Best was not disabled. The ALJ found that Best had not engaged in substantial gainful activity since his alleged onset date (step one) and that degenerative disc disease in his back, pain in his neck, right carpal tunnel syndrome and ulnar neuropathy, obesity, diabetes, hypertension, anxiety, and depression were severe impairments (step two). The ALJ then determined that these impairments did not equal a listed impairment (step three) and that he had the residual functional capacity ("RFC") to perform light work limited to frequent but not constant fine-finger manipulations using his right arm and no work with ladders, ropes, or scaffolds.

In determining this RFC, the ALJ found Best's testimony "not fully credible" because his doctor's notes reported that he had only slightly diminished mobility in his back and it did not affect his posture or gait. The ALJ also noted that Best's and his wife's reports of his activities were less restrictive than Best's testimony at the hearing. Based on the vocational expert's testimony, the ALJ concluded that Best could not perform past relevant work but could perform other available jobs, including work as a retail marker, housekeeper, or dining-room attendant (step five).

The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. *See Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). Best then sought judicial review, and a district judge upheld the ALJ's ruling, which she praised as "extremely detailed and thorough."

Best raises three challenges to the ALJ's assessment that he could perform light work with some limitations. First, Best contends that the ALJ did not account for the fact that he would not be able to hold a job because he would have to miss work more often than employers tolerate. Best attributes his absenteeism to two causes: the five "bad days" he experiences each month and the four doctors' appointments he attends each month.

This first challenge is frivolous. As for his doctors' appointments, Best has not shown that they would preclude him from working. The vocational expert testified that employers generally tolerate up to three absences per month, and Best cannot point to anything in the record to suggest that his appointments would require him to miss a full day of work or that he could not schedule his appointments outside of working hours. As for his "bad days," the ALJ reasonably concluded that Best's testimony on this subject was not entirely credible. The ALJ based her decision on a thorough review of evidence, including Best's testimony, his self-report form, his wife's statements, and

the medical evidence. The ALJ's credibility finding was not "patently wrong." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). So we see no error in the ALJ's refusal to incorporate Best's claim of absences due to "bad days" into her evaluation of his ability to work. *See Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009) (concluding that the ALJ need incorporate into hypotheticals only the impairments and limitations that the ALJ finds credible).

Second, Best argues that the ALJ erred in formulating the RFC because she did not include any limitations based on his neck problems. Best points to his diagnosis of radiculopathy, but no doctor recommended any limitations based on this condition. There is no error when there is "no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ." *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004).

Third, Best argues that the ALJ engaged in "forbidden backward[] analysis" because she announced his RFC before describing and analyzing the diabetes and mental-health evidence in the record. This argument rests on *Bjornson v. Astrue*, which criticized the backward nature of oft-used boilerplate language stating that a "claimant's statements concerning the intensity, persistence and limiting effects" of symptoms "are not credible to the extent they are inconsistent with the above [RFC]." 671 F.3d 640, 644–45 (7th Cir. 2012). That language is problematic, we explained in *Bjornson*, because it implies that the RFC assessment precedes the claimant's testimony about ability to work when instead that testimony should be considered in the determination of the claimant's ability to work. *Id.* at 645–46.

Best's analogy to *Bjornson* is misplaced. The ALJ here did not proceed "backward" but instead merely announced her conclusion about the RFC before describing and assessing some of the medical evidence that explained her conclusion. Though perhaps it would have made more sense to place the paragraph in question at the end of this discussion, it does not necessarily follow that the ALJ's reasoning was erroneous. Simply put, Best makes too much of the placement of one paragraph in the ALJ's 19-page decision. As the district judge noted, "[w]ritten legal decisions often state conclusions before the detailed support and rationale for those conclusions are provided[] as a way of demonstrating the supporting reasons for the conclusion."

Best also argues that the ALJ erred by making a credibility determination without addressing his work history and military service. In support he cites cases from this court and others stating that a claimant's significant work history can be a factor in

support of a favorable credibility determination. *See, e.g., Stark v. Colvin*, 813 F.3d 684 (7th Cir. 2016). But none of these cases establish that an ALJ commits reversible error by not mentioning a claimant's work history in the written opinion. Best's arguments ignore more recent cases explaining that "work history is just one factor among many, and it is not dispositive." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016).

AFFIRMED