In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-2570

DEBORAH M.,

*Plaintiff-Appellant,*

*v.*

ANDREW M. SAUL, Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 19-cv-4263 — **Tim A. Baker**, *Magistrate Judge.*

ARGUED JANUARY 22, 2021 — DECIDED APRIL 14, 2021

Before RIPPLE, KANNE, and SCUDDER, *Circuit Judges.*

KANNE, *Circuit Judge.* After a hearing, an administrative law judge considered a great deal of evidence to determine that the Plaintiff has the capacity to perform light work and thus is not entitled to disability benefits. Plaintiff argues that the ALJ's decision was wrong because the ALJ selectively reviewed evidence concerning her neck and back problems; inaccurately assessed the intensity, persistence, and limiting effects of her symptoms; and failed to include certain

manipulative limitations in her residual functional capacity assessment and in the hypothetical questions posed to a vocational expert.

These arguments are not persuasive. The ALJ did not ignore a line of evidence contradicting her decision, her assessment of Plaintiff's symptoms was not patently wrong, and she did not fail to note any supported manipulative limitations. The ALJ's decision was thus supported by substantial evidence, and we affirm the decision of the district court denying Plaintiff's request for a remand.

## I. BACKGROUND

In 2016, Plaintiff filed an application for disability benefits based on alleged heart and back problems, arthritis, neuropathy, and carpal tunnel syndrome. An ALJ held a hearing and considered the application under 20 C.F.R. § 416.920(a), which sets forth a five-step process for evaluating disability benefits claims.

The only part of that evaluation at issue in this appeal is the ALJ's assessment of Plaintiff's "residual functional capacity" ("RFC")—i.e., her ability to work. The ALJ determined that Plaintiff has the RFC to perform "light work" as defined in 20 C.F.R. § 404.1567(b), with some additional limitations on tasks like climbing ramps. In reaching this conclusion, the ALJ considered a mountain of evidence and noted that although Plaintiff suffers from several medical problems, those problems are not "of such a frequency, duration, or intensity as to prevent her from" performing light work.

On the basis of that finding, the ALJ determined that Plaintiff is not disabled. The Social Security Administration thus

denied Plaintiff's claim for disability benefits initially and upon reconsideration.

Plaintiff appealed the ALJ's decision to the district court and asked for a remand because the ALJ committed reversible error when determining her RFC by (1) selectively reviewing evidence of cervical and lumbar degenerative disc disease (back problems); (2) incorrectly discounting Plaintiff's credibility regarding her description of the intensity, persistence, and limiting effects of her symptoms; and (3) not including any manipulative limitations in the RFC assessment. The district court affirmed the ALJ's decision and denied Plaintiff's request for a remand. Plaintiff now appeals and raises the same arguments before us.

## II. ANALYSIS

We review the district court's decision *de novo*. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998)). But we apply a deferential standard of review when assessing the ALJ's decision. *Id.* (citing *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001)). The ALJ's findings are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). We do not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] judgment for that of the Commissioner." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). And we will "reverse only if the record

'compels' a contrary result." *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010) (quoting *Moab v. Gonzales*, 500 F.3d 656, 660 (7th Cir. 2007)). The record in this case by no means does so.

### A. Evidence of Plaintiff's Back Problems

We have often held that "an ALJ's 'adequate discussion' of the issues need not contain 'a complete written evaluation of every piece of evidence.'" *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011)). In other words, an "ALJ need not … discuss every piece of evidence in the record and is prohibited only from ignoring an entire line of evidence that supports a finding of disability." *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010) (citing  *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)).

But we have also said that "[a]lthough the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (citing *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003); *Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003)).

Plaintiff argues that these are two separate "lines" of cases and that the best way to harmonize them is to hold that an ALJ must address every single piece of relevant evidence that cuts against its decision. As Plaintiff puts it, an ALJ is welcome to ignore evidence of "a hangnail," but that's about it.

We disagree. These are not two "lines" of cases but just two ways of saying the same thing—an ALJ doesn't need to address every piece of evidence, but he or she can't ignore a line of evidence supporting a finding of disability. *Jones*, 623 F.3d at 1162. In *Jones*, for example, the ALJ failed to discuss an

MRI that showed "mild" degenerative changes in two of her spinal disks. *Id.* We held that this was not reversible error because, "[q]uite simply, the ALJ did not ignore an entire line of evidence that supported a finding of disability and her failure to discuss the 2006 MRI matter[ed] little in light of [the claimant's] treating physicians' consistent description of her condition as mild or benign." *Id.*

The ALJ here likewise did not "ignore an entire line of evidence that supported a finding of disability." *Jones*, 623 F.3d at 1162. Instead, she more than adequately discussed and rejected Plaintiff's evidence suggesting that she suffered a back impairment that would prevent her from performing light work.

For example, as the district court thoroughly recounted, the ALJ considered (1) that Plaintiff had alleged disability due to spinal stenosis, (2) Plaintiff's November 2015 x-rays showing lower degenerative spondylosis and a small right subligamentous posterior disc extrusion with small craniad migration at L4-L5, (3) Plaintiff's February 2016 MRI showing "small to moderate sized chronic central disc extrusions at C5-C6 and C6-C7 levels; mild spondylosis; and mild straightening of the normal cervical lordosis," (4) that "[i]n April 2016, [Plaintiff] had negative straight leg raises and was noted as having chronic back pain," (5) Plaintiff's June 2016 MRI that showed "some significant straightening of lordosis," (6) Plaintiff's consultative examination in July 2016 showing that she "had reduced range of motion of the cervical and lumbar spine" and "spasms at 1+ in the thoracic and lumbar region," and (7) Plaintiff's "radiological studies of the cervical and lumbar spine" showing some degenerative disc disease.

The ALJ's purported omissions regarding Plaintiff's back pain, on the other hand, were slight. For instance, Plaintiff points out that the ALJ only mentioned normal findings from a January 2016 examination, did not expressly list all the findings from a February 2016 MRI, and failed to mention her continued use of pain medication.

The omitted evidence that Plaintiff highlights, like the omitted evidence in *Jones*, did not reveal any substantially different information about her back problems than did the evidence that the ALJ addressed. As a result, it was not improper for the ALJ to omit a specific discussion of it.

*B. Severity of Plaintiff's Symptoms*

"So long as an ALJ gives specific reasons supported by the record, we will not overturn his credibility determination unless it is patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015) (citing *Pepper*, 712 F.3d at 367).

The ALJ in this case provided abundant reasons for discounting the credibility of Plaintiff's claims regarding the intensity, persistence, and limiting effects of her symptoms. Namely, the ALJ stated that "radiological studies" showed no "nerve root impingement" in Plaintiff's spine, that Plaintiff "has not undergone any surgery for spinal issues and there has been little in the way of actual treatment," and that Plaintiff has "demonstrated normal gait and muscle strength" and "been essentially neurologically intact."

Still, Plaintiff argues that the ALJ's credibility determination was patently wrong for two reasons. First, she argues that the ALJ improperly "played doctor" by considering her lack of nerve root impingement and her lack of treatment. Second, she argues that the ALJ erred by finding that some of her daily

activities contradicted the alleged intensity of her symptoms. Neither contention is convincing.

### 1. The ALJ Did Not "Play Doctor"

In making a credibility determination, "[a]n ALJ should consider elements such as objective medical evidence of the claimant's impairments … and treatment (including medication)." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (citing *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). The regulations on point also contemplate that an ALJ will consider a claimant's treatment history. *See* 20 C.F.R. § 416.929(c)(3)(v) ("Factors relevant to your symptoms, such as pain, which we will consider include … (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms … ."). As an example, in *Simila v. Astrue*, we affirmed an adverse credibility finding based on the claimant's "relatively conservative" treatment consisting of "various pain medications, several injections, and one physical therapy session." 573 F.3d 503, 519 (7th Cir. 2009).

Nevertheless, an ALJ "must not succumb to the temptation to play doctor." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (citing *Herron v. Shalala*, 19 F.3d 329, 334 n.10 (7th Cir. 1994); *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). For instance, in *Plessinger v. Berryhill*, an ALJ improperly played doctor by misconstruing a doctor's opinion that surgery might not be the best treatment option for the claimant. 900 F.3d 909, 915 (7th Cir. 2018). "The ALJ treated this opinion as if it showed that [the claimant's] condition was not severe enough for surgery." *Id.* But the doctor actually stated that opinion because the claimant "was suffering from failed back

surgery syndrome, … surgery was less promising than it would otherwise be." *Id.*

Here, the ALJ mentioned that Plaintiff lacked "nerve root impingement in her spine" and that she did not receive surgery or other treatments for her spinal issues. In mentioning this lack of impingement and treatment, the ALJ was not playing doctor. Rather, she was just considering Plaintiff's condition and treatment—as required, *see Prochaska*, 454 F.3d at 738—and providing additional facts in support of her credibility analysis. And Plaintiff has not identified any improper inferences, like those the ALJ drew in *Plessinger*, that the ALJ here drew from Plaintiff's relatively conservative treatment.

Further, contrary to Plaintiff's argument, Social Security Rule 16-3p did not require the ALJ to ask Plaintiff about her failure to seek treatment. That rule provides that an ALJ must consider possible reasons for a failure to seek treatment. *See Tonya R. v. Saul*, No. 19-CV-2374, 2020 WL 1675666, at *3 (N.D. Ill. Apr. 6, 2020). The ALJ here did just that because, in the paragraph right before mentioning that Plaintiff did not have surgery for spinal issues, the ALJ pointed out that Plaintiff "reported that she was doing well," "denied having weakness, dizziness, shortness of breath, or chest pain," and had normal muscle strength and tone.

Last, even if the ALJ's consideration of Plaintiff's lack of treatment were wrong, Plaintiff has not shown that it caused any harm. We will only remand a case if we believe that a second proceeding might come to a different result. *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

Plaintiff has not shown that a new proceeding could lead to a different result because she has not pointed to anything

in the record to show that her doctors considered more invasive treatments, nor has she identified any specific reason that she did not seek more treatment. *See Summers v. Colvin*, 634 F. App'x 590, 592 (7th Cir. 2016) (nonprecedential) ("And even if the ALJ had concluded that the gaps [in treatment] undermined [Plaintiff's] credibility, she has not explained how she was harmed by the ALJ's failure to explore her reasons.").

### 2. *The ALJ Correctly Considered Plaintiff's Daily Activities*

Once more, Plaintiff argues that the ALJ erred by finding that some of her daily activities contradicted the alleged intensity of her symptoms. Specifically, Plaintiff says that the ALJ failed to mention some restrictions on these daily activities such as that, when Plaintiff shops, she has to lean on the cart, and when she sweeps her floors, she can only do one room at a time.

Plaintiff is correct in noting that a claimant's ability to perform daily activities does not necessarily translate into an ability to work full time. *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013).

But as the district court pointed out, the ALJ here addressed this concern and wrote, "While [daily] activities are not being compared to actual work situations, I do not consider evidence regarding the claimant's daily activities as sufficient to establish that she is unable to function at the level I have assessed." In other words, the ALJ correctly looked at Plaintiff's daily activities to see if they corroborated her pain claims, and she found that they did not. She did not equate Plaintiff's activities to full-time work. And the ALJ's failure to mention a few limitations on some of Plaintiff's activities, if

wrong at all, was not so "patently wrong" as to warrant reversal.

*C. Manipulative Limitations*

In an RFC assessment and in a hypothetical question posed to a vocational expert, an ALJ must include all of a claimant's limitations supported by the medical record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).

As Plaintiff points out, the ALJ here did not include any manipulative limitations in her RFC or in the hypothetical posed to the vocational expert. But the ALJ left out such limitations because she determined that they were not supported by the medical record. The ALJ acknowledged that Plaintiff "reported having difficulties with … using her hands," and the ALJ took this "matter into account in assessing [the] residual functional capacity." But the ALJ determined that "[t]he record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision."

Plaintiff has not shown on appeal that this determination was incorrect. No doctor who addressed Plaintiff's carpal tunnel syndrome ever deemed it a manipulative limitation. To the contrary, two doctors who determined that she had "severe" carpal tunnel syndrome nonetheless found that she did not have manipulative limitations.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the district court.