In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-2029

AARON P. BRACE,

*Plaintiff-Appellant,*

*v.*

ANDREW M. SAUL,
Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:18cv216 — **William C. Lee**, Judge

ARGUED JANUARY 30, 2020 — DECIDED AUGUST 14, 2020

Before SYKES, *Chief Judge*, and MANION and KANNE,
*Circuit Judges*.

SYKES, *Chief Judge*. Aaron Brace applied for Social Security disability benefits based on a number of chronic conditions—primarily back and neck pain due to degenerative disc disease. An administrative law judge denied his application after crediting testimony from a vocational expert that jobs are available in significant numbers in the national

economy for a person with Brace's limitations. Brace's lawyer
had asked the vocational expert to explain how he arrived at
his job estimates. The expert's answer was inscrutable. The
ALJ accepted his testimony anyway and on that basis reject-
ed Brace's claim for benefits. That approach does not satisfy
the substantial-evidence standard. *See Chavez v. Berryhill*,
895 F.3d 962, 968–70 (7th Cir. 2018). We reverse and remand
to the agency for further proceedings.

## I. Background

Brace, now age 40, was injured on the job in 2013 and can
no longer perform his past work in health service, food ser-
vice, and construction. He applied for disability benefits,
claiming persistent back and neck pain and a host of other
conditions. An administrative law judge received evidence
of his medical and work history and applied the five-step
analysis found in 20 C.F.R. § 404.1520(a)(4). At step one, the
ALJ found that Brace had not worked since his injury. At
step two, the ALJ found severe impairments from degenera-
tive disc disease, neuropathy in the left elbow and forearm,
and a history of surgery in his right shoulder. These impair-
ments, the ALJ decided at step three, did not presumptively
establish a disability. But based on the testimony of a voca-
tional expert, the ALJ ruled at step four that Brace could not
perform any of his past work.

The fifth and final question was whether Brace can none-
theless perform a significant number of other jobs in the na-
tional economy. The vocational expert testified that Brace
could perform three jobs: a callout operator, semiconductor
bonder, or registration clerk. The expert added a fourth—a
counter clerk—subject to certain lifting, standing, and walk-
ing restrictions. He further testified that a significant number

of jobs exist across the four job categories—an estimated 140,000 in total. 20 C.F.R. §§ 404.1569, 404.1569a.

The expert's jobs estimate is critical to this appeal. If a claimant cannot perform his previous work, the Social Security Administration bears the burden of showing that a significant number of other jobs are available to the claimant. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. § 416.960(c)(2). For this step in the analysis, ALJs often rely on vocational experts—"professionals under contract with SSA to provide impartial testimony in agency proceedings." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019); *see also* 20 C.F.R. § 404.1566(e). They estimate the number of jobs that exist, "whether vacant or filled, and without regard to the location of the work and a claimant's likelihood of being hired." *Chavez*, 895 F.3d at 964; 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.966(a).

Vocational experts often rely on the Dictionary of Occupational Titles, a database of job titles that has not been updated in almost 30 years. *Occupational Information System Project*, SOC. SEC. ADMIN., https://www.ssa.gov/disability research/occupational_info_systems.html (last visited Aug. 12, 2020). The database does not list the number of jobs associated with each job title, so the vocational expert must perform an estimate. Because the database of job titles is so outdated, an expert's methodology for connecting job titles to reliable estimates of the number of jobs for each title is especially important. The Social Security Administration has itself acknowledged this issue and expressed an intent to update the database, but the new version has not yet arrived. *Id.*

Brace's attorney asked the vocational expert ("VE") to explain his methodology for estimating that 140,000 jobs are available in the national economy. The expert answered that no study (and no software available to him) lists the number of jobs associated with any job category in the database, including the categories that he assigned to Brace. Instead, he linked the job categories from the Dictionary of Occupational Titles to a database called the Occupational Employment Statistics:

> We're looking at the total number of DOT titles … that are in that OES category, and then based upon an understanding of how those jobs are performed, how they exist, there's a weighting that [is] done to those categories and from that we get an estimate of the amount of jobs in the specific categories.

Brace's lawyer then asked the expert to explain his methodology for this "weighting" process:

> Well, it's—it's that combination of, one, you are looking at the number of titles that are in that category[,] and then based upon the—my information that I have as far as how the frequency of those jobs are performed, then we do an allocation based upon weighting or reweighting those allocations to get the estimates of the numbers. So you look at that particular job title and how it is weighted to the total number of jobs that [are] in that OES category to make an estimate. And all these are estimates because … there is no specific calculation.

Brace's attorney objected to this testimony. Citing *Alaura v. Colvin*, 797 F.3d 503 (7th Cir. 2015), he argued that the VE's job-number estimate lacked sufficient foundation and methodological rationality. In *Alaura* we criticized the use of the so-called "equal distribution method," which estimates jobs in one job title by assuming that all job titles in a large category share the category's number of jobs equally. *Id.* at 507–08. We explained that this approach "assum[es] that each narrow category has the same number of jobs as each other narrow category—which is preposterous." *Id.* at 508. We expressed concern that a job-number estimate based on this method is likely to be nothing more than "a fabrication." *Id.*

The ALJ conceded that Brace's objection had "some merit." But he nonetheless accepted the VE's testimony as "satisfactory," reasoning that an estimate of this size—140,000 jobs—would leave a significant number of jobs available to Brace even if the VE's approach had a considerable margin of error. Accordingly, the ALJ ruled against Brace at step five and rejected his application for benefits.

Brace sought review in district court. Among other claims of error, he challenged the VE's job-number estimate as unreliable. The judge disagreed, concluding that the ALJ adequately "investigated" the foundation for the VE's opinion and explained why he accepted it. Brace appealed, reprising his argument about the unreliability of the VE's job-number estimate.[1]

---

[1] Brace's appeal raises a second claim of error regarding the ALJ's treatment of his employment history. Citing *Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016), he argues that his demonstrated desire to work deserved greater credit. This argument is meritless. Though not statutorily required to consider Brace's work history, *id.*, the ALJ adequately did so.

## II. Discussion

An ALJ's factual findings in a disability proceeding are conclusive if supported by "substantial evidence." 42 U.S.C. § 405(g). The threshold for this standard "is not high." *Biestek*, 139 S. Ct. at 1154. "Substantial evidence" in this context "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

As applied to an expert's estimate of available jobs in the national economy, "the substantial evidence standard requires the ALJ to ensure that the approximation is the product of a reliable method." *Chavez*, 895 F.3d at 968. This does not mean that the VE's opinion must satisfy the standard for admission of expert testimony under Rule 702 of the Federal Rules of Evidence, which does not apply in disability proceedings. *Id.* As we explained in *Chavez*, a precise count is not necessary: "A VE's estimate will be just that—an estimate." *Id.* Still, the method used to estimate job numbers "must be supported with evidence sufficient to provide some modicum of confidence in its reliability." *Id.* at 969. And where, as here, the claimant challenges the job-number estimate, the ALJ "must require the VE to offer a reasoned and principled explanation" of the method he used to produce it. *Id.* at 970. And the explanation must be sufficient to instill some confidence that the estimate was not "conjured out of whole cloth." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002).

Brace's attorney asked the VE to explain the method he used to arrive at his job-number estimate of 140,000. It's worth repeating the key part of his response:

> Well, it's—it's that combination of, one, you are looking at the number of titles that are in that [OES] category[,] and then based upon the—my information that I have as far as how the frequency of those jobs are performed, then we do an allocation based upon weighting or re-weighting those allocations to get the estimates of the numbers.

This answer is entirely unilluminating. Testimony that incants unelaborated words and phrases such as "weighting" and "allocation" and "my information that I have" cannot possibly satisfy the substantial-evidence standard. What allocations? How is the weighting and re-weighting performed? According to what criteria? And what is the unidentified "information" in the expert's possession?

The Supreme Court's recent decision in *Biestek* explained that a vocational expert's job-number testimony will survive review under the substantial-evidence standard as long as it rests on a well-accepted methodology and the expert describes the methodology "cogently and thoroughly." 139 S. Ct. at 1155. The Court gave this illustrative example:

> Suppose an expert … testifies about the approximate number of various sedentary jobs an applicant for benefits could perform. She explains that she arrived at her figures by surveying a range of representative employers; amassing specific information about their labor needs and employment of people with disabilities; and extrapolating those findings to the national economy by means of a well-accepted methodology. She answers cogently and thor-

> oughly all questions put to her by the ALJ and
> the applicant's lawyer. And nothing in the rest
> of the record conflicts with anything she
> says. … [H]er testimony would be the kind of
> evidence—far "more than a mere scintilla"—
> that "a reasonable mind might accept as ade-
> quate to support" a finding about job availabil-
> ity.

*Id.* (citation omitted).

None of these indicia of reliability are present here. The VE's jargon about his weighting methodology was neither cogent nor thorough—indeed, it was unintelligible. And he never claimed that his method for estimating job numbers is a well-accepted one, much less explained why that is so.

The parties disagree on whether the expert impermissi-bly relied on the "equal distribution method," the flawed job-estimate methodology at issue in both *Alaura* and *Chavez*. In Brace's view the VE implicitly used this method because he apparently divided the number of jobs from a job group in the Occupational Employment Statistics by the number of categories in that group as reflected in the Dictionary of Occupational Titles. The Commissioner responds that the expert "repeatedly stated that he determined job numbers based upon 'weighting,' not equal distribution."

The very existence of this debate confirms our conclusion that the VE's testimony does not satisfy the substantial-evidence standard. *See Chavez*, 895 F.3d at 970. Unlike the equal-distribution method, which at least has a defined meaning, no one knows what the VE meant by "weighting." This strikes us as the agency taking a "trust me" approach

rather than—as required by the statute and regulations—carrying its burden to demonstrate that significant employment exists in the national economy for a person with this claimant's restrictions. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(g). Obscuring the process, rather than elucidating it, runs contrary to the Supreme Court's admonition that the process "be understandable to the layman claimant." *Richardson v. Perales*, 402 U.S. 389, 400 (1971).

The ALJ gave two reasons for accepting the expert's methodology but neither persuades us. First, the ALJ reasoned that Brace's counsel should have objected to the expert's qualifications before he testified. But a claimant need not object to an expert's *qualifications* in order to object to the expert's *methodology*. *Chavez*, 895 F.3d at 964. In *Chavez* the parties stipulated to the expert's qualifications, *id.*, but the claimant nonetheless successfully challenged the expert's methodology, *id.* at 971.

Second, the ALJ reasoned that the jobs number cited by the expert was so large that "[e]ven if the methodology used create[d] a significant margin of error[,] … a significant number of jobs exist that can be performed by the claimant." But "[e]vidence is not 'substantial' if vital testimony has been conjured out of whole cloth." *Donahue*, 279 F.3d at 446. An unreliable job-number estimate cannot be considered reliable merely because it is large. *Chavez*, 895 F.3d at 970.

As in *Chavez*, "it may be that the evidentiary gap [can be] filled through expanded testimony from the VE about his estimates or through some other showing that there are a significant number of jobs in the economy" available to Brace given his limitations. *Id.* Accordingly, a remand for a new hearing is necessary to determine his entitlement to

benefits. We VACATE and REMAND for further proceedings consistent with this opinion.