In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 22-1901
AUGUST FETTING,
 Plaintiﬀ-Appellant,
 v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,
 Defendant-Appellee.
 ____________________

 Appeal from the United States District Court for the
 Eastern District of Wisconsin.
 No. 20-cv-1268 — William C. Griesbach, Judge.
 ____________________

 ARGUED FEBRUARY 8, 2023 — DECIDED MARCH 9, 2023
 ____________________

 Before FLAUM, SCUDDER, and ST. EVE, Circuit Judges.
 ST. EVE, Circuit Judge. This case concerns the denial of Au-
gust Fetting’s application for supplemental security income.
An administrative law judge (“ALJ”) found that although
Fetting possessed particular physical and mental limitations,
he was not disabled under the Social Security Act because he
could perform work in certain jobs that existed in signiﬁcant
numbers in the national economy—for example, the work of
2 No. 22-1901

a cleaner/housekeeper, routing clerk, or marker. Fetting ﬁled
suit in the District Court for the Eastern District of Wisconsin
to review the ALJ’s decision, and the court aﬃrmed the de-
nial. On appeal, Fetting raises only one issue: whether sub-
stantial evidence supports the ALJ’s ﬁnding that a signiﬁcant
number of these jobs exist in the national economy. We hold
that it does and aﬃrm.
 I. Background
 Fetting applied for supplemental security income in
March 2018. At the time, he was ﬁfty years old and suﬀered
from back pain, headaches, depression, and anxiety. The So-
cial Security Administration denied his application initially
and again on rehearing, and Fetting ﬁled a written request for
an administrative hearing.
 During the hearing, a vocational expert (“VE”) testiﬁed to
Fetting’s physical and mental limitations and his ability to
perform certain jobs. Fetting’s attorney told the ALJ that he
had “[n]o objections to [the VE’s] qualiﬁcations” but that he
“want[ed] to reserve [the] right to object to speciﬁc testimony
if necessary.” The ALJ then asked the VE whether Fetting
could perform any job that existed in signiﬁcant quantities in
the national economy. The VE answered aﬃrmatively, testi-
fying that Fetting could perform the representative occupa-
tions of a cleaner/housekeeper, a routing clerk, and a marker.
The VE estimated that, in the national economy, there were
200,000 cleaner/housekeeper jobs, 40,000 routing clerk jobs,
and 200,000 marker jobs.
 During cross examination, Fetting’s counsel asked the VE
for the source of his jobs data. The VE stated that he calculated
his estimates from numbers published by the U.S. Bureau of
No. 22-1901 3

Labor Statistics. He explained that “[t]he Bureau [does] not
provide job numbers on individual … occupations” and in-
stead “combine[s] several occupations in a grouping.” To es-
timate the prevalence of an individual occupation within a
grouping, the VE explained, he “look[ed] at the composition
of [the] group” and determined the relative frequency of each
occupation within the group using his “knowledge of the la-
bor market, [acquired] over 30+ years of job placement activi-
ties.” Fetting’s attorney asked the VE if he used a speciﬁc for-
mula, to which the VE stated: “It’s a simple formula based on
the composition of that grouping. It’s not a hard and fast sci-
entiﬁc type formula.” At the end of the hearing, Fetting’s at-
torney asked the VE if he had “done any analysis to validate”
his estimates. The VE stated that he had not conducted any
“formal analysis” but had “in the past checked numbers in
other reporting formats.”
 The ALJ issued a decision ﬁnding that Fetting did not have
a disability under the Social Security Act (“the Act”) and
therefore was not eligible for beneﬁts. He found that, despite
possessing certain physical and mental limitations, Fetting
could perform the requirements of the representative occupa-
tions of a cleaner/housekeeper, routing clerk, and marker, and
that these jobs existed in signiﬁcant quantities in the national
economy. In making this ﬁnding, the ALJ relied on the VE’s
testimony, which the ALJ found to be “consistent with the in-
formation contained in the Dictionary of Occupational Titles”
and “based on [the VE’s] professional experience.”
 Fetting sought judicial review of the ALJ’s decision in fed-
eral court, arguing, among other things, that the VE’s meth-
odology for calculating his job number estimates was unreli-
able. The district court aﬃrmed the ALJ’s ﬁnal decision. The
4 No. 22-1901

court found that Fetting had forfeited his arguments criticiz-
ing the reliability of the VE’s testimony by failing to object at
the administrative hearing or in a post-hearing brief and that,
as a result, “the ALJ was permitted to accept the VE’s uncon-
tradicted testimony.”
 II. Analysis
 To be entitled to beneﬁts under the Act, a claimant must
be “aged, blind, or disabled.” 42 U.S.C. § 1382(a)(1). The Act
deﬁnes disability as the inability “to engage in any substantial
gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to re-
sult in death or which has lasted or can be expected to last for
a continuous period of not less than twelve months.” Id.
§ 1382c(a)(3)(A). The impairment must be of “such severity
that [the claimant] is not only unable to do his previous work
but cannot, considering his age, education, and work experi-
ence, engage in any other kind of substantial gainful work
which exists in the national economy.” Id. § 1382c(a)(3)(B).
 The Social Security Administration utilizes a ﬁve-step in-
quiry when determining whether a claimant suﬀers from a
disability under the Act. The ALJ must evaluate:
 (1) whether the claimant is currently [un]employed; (2)
 whether the claimant has a severe impairment; (3)
 whether the claimant’s impairment meets or equals
 one of the impairments listed by the [Commissioner]
 … ; (4) whether the claimant can perform her past
 work; and (5) whether the claimant is capable of per-
 forming work in the national economy.
Cliﬀord v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000) (quoting
Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995)); see also 20
No. 22-1901 5

C.F.R. § 404.1520. The burden of proof is on the claimant for
the ﬁrst four steps. Cliﬀord, 227 F.3d at 868. At step ﬁve, the
burden shifts to the agency to show that “there are signiﬁcant
numbers of jobs in the national economy for someone with
the claimant’s abilities and limitations.” Ruenger v. Kijakazi, 23
F.4th 760, 761 (7th Cir. 2022) (citing 20 C.F.R. § 416.960(c)(2)).
 To meet this burden, the agency often relies upon VEs to
assess a claimant’s ability to engage in certain activities. VEs
testify as to the kinds of work that a claimant can perform, as
well as the prevalence of those jobs in the national economy
based on statistics from “publicly available sources,” “‘infor-
mation obtained directly from employers[,]’ and data other-
wise developed from their own ‘experience in job placement
or career counseling.’” Biestek v. Berryhill, 139 S. Ct. 1148, 1152
(2019) (citations omitted). A VE’s job number testimony is
only an estimate; VEs “are neither required nor expected to
administer their own surveys of employers to obtain a precise
count of the number of positions that exist at a moment in
time for a speciﬁc job.” Chavez v. Berryhill, 895 F.3d 962, 968
(7th Cir. 2018).
 The Social Security Administration utilizes the job classiﬁ-
cation system in the U.S. Department of Labor’s Dictionary of
Occupational Titles (DOT), but the DOT does not provide esti-
mates of the prevalence of these jobs in the national economy.
Accordingly, many VEs—including the one who testiﬁed at
Fetting’s hearing—base their estimates on the U.S. Bureau of
Labor Statistics’ Occupational Employment Statistics (OES),
which contains annual employment estimates for 800 occupa-
tions. The job number estimates published in the OES do not
exactly correspond to the DOT job classiﬁcation system: the
former utilizes the Standard Occupational Classiﬁcation
6 No. 22-1901

(SOC) system, comprising broad occupational categories en-
compassing multiple DOT job titles. Thus, when calculating
job number estimates, VEs must convert the information in
the OES from the SOC system to the DOT system.
 Fetting contends that the VE in this case used an unreliable
methodology for calculating his job number estimates. Before
addressing this argument, however, we ﬁrst determine
whether Fetting forfeited his objections to the VE’s testimony
by failing to make them at the administrative hearing.
A. Forfeiture
 “When no one questions the [VE’s] foundation or reason-
ing, an ALJ is entitled to accept the [VE’s] conclusion ….” Do-
nahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2002). Accord-
ingly, a claimant who does not object to a VE’s testimony dur-
ing the administrative hearing forfeits those objections. See
Brown v. Colvin, 845 F.3d 247, 254 (7th Cir. 2016). Fetting con-
tends that he objected to the VE’s testimony in a letter and
prehearing brief, as well as at the hearing, thereby preserving
these arguments on appeal. We disagree.
 Neither Fetting’s letter nor his prehearing brief contained
the objections he now raises. The letter stated that Fetting
“d[id] not stipulate or consent to the vocational expert provid-
ing numbers” in advance of the hearing and that he “d[id] not
believe a proper foundation for [the VE’s] testimony w[ould]
be established [or that] [the VE] has training or experience
suﬃcient to provide accurate job numbers.” The letter did not
challenge the VE’s methodology for estimating the prevalence
of jobs in the national economy or make any speciﬁc objec-
tions to the VE’s job number testimony. And although the let-
ter reserved Fetting’s “right to submit written post-hearing
No. 22-1901 7

objections and statements with respect to any vocational wit-
ness testimony,” Fetting did not ﬁle any post-hearing objec-
tions or statements.
 Similarly, Fetting’s prehearing brief did not raise any spe-
ciﬁc concerns regarding the VE’s testimony or the methodol-
ogy he used. It stated: “The claimant does not object to the
vocational expert’s qualiﬁcations but reserves the right to ob-
ject to the substance of the vocational expert’s testimony. The
claimant may ﬁle a post-hearing brief outlining errors and in-
consistencies in the vocational testimony.” Like his letter,
Fetting merely reserved the right to make objections to the
VE’s testimony at or after the hearing—which he did not do.
 Fetting’s argument that his lawyer’s questioning at the
hearing suﬃciently preserved his arguments is similarly un-
persuasive. A claimant who fails to object at the hearing for-
feits any challenge to the VE’s testimony. See Brown, 845 F.3d
at 254; Liskowitz v. Astrue, 559 F.3d 736, 743 (7th Cir. 2009). This
objection must be speciﬁc; to avoid forfeiture, a claimant must
do more than make a general objection or vaguely ask the VE
about his methodology. Compare Coyier v. Saul, 860 F. App’x
426, 427–28 (7th Cir. 2021) (ﬁnding forfeiture where the claim-
ant made only one general objection and asked no speciﬁc
questions), with Chavez, 895 F.3d at 966 (addressing the claim-
ant’s arguments where she made “repeated” objections about
the VE’s use of the equal distribution method), and Brace v.
Saul, 970 F.3d 818, 821 (7th Cir. 2020) (addressing the claim-
ant’s arguments where he objected that the VE’s estimate
“lacked suﬃcient foundation and methodological rational-
ity”).
 During the hearing, Fetting’s attorney asked the VE four
questions regarding the VE’s methodology but did not
8 No. 22-1901

otherwise object or indicate that he believed the methodology
was unreliable. Moreover, Fetting’s attorney stated during the
hearing that he reserved the right to object in a post-hearing
brief but never ﬁled any such objection. See Coyier, 860 F.
App’x at 427–28 (emphasizing that the claimant did not sub-
mit a post-hearing brief “despite assuring the court prior to
and at the hearing that he would do so”). He therefore for-
feited his arguments.
 Fetting contends that the doctrines of forfeiture and
waiver do not apply in disability proceedings, citing the Su-
preme Court’s decision in Carr v. Saul, 141 S. Ct. 1352, 1359
(2021), for support. Putting aside the fact that Fetting has
waived this argument because he did not assert it in his open-
ing brief, see Bernard v. Sessions, 881 F.3d 1042, 1048 (7th Cir.
2018), Fetting’s argument has no merit. In Carr, the Court ad-
dressed whether the claimants forfeited their arguments that
they were “entitled to new hearings before diﬀerent ALJs be-
cause the ALJs who originally heard their cases were not
properly appointed under the Appointments Clause of the
U.S. Constitution.” 141 S. Ct. at 1356. The Court stated that its
decision was made “[i]n the speciﬁc context of petitioners’
Appointments Clause challenges” and that “[o]utside th[at]
context … the scales might tip diﬀerently.” Id. at 1360 & n.5.
For this reason, Carr does not help Fetting.
B. Substantial Evidence
 Independent of forfeiture, the ALJ’s ﬁnding that there are
a signiﬁcant number of jobs for cleaners/housekeepers, rout-
ing clerks, and markers in the national economy is supported
by substantial evidence. Brace, 970 F.3d at 821 (quoting 42
U.S.C. § 405(g)). The substantial evidence standard “is not
high” and requires only enough “relevant evidence as a
No. 22-1901 9

reasonable mind might accept as adequate to support a con-
clusion.” Id. (quoting Biestek, 139 S. Ct. at 1154).
 When the ALJ bases his decision on the testimony of a VE,
substantial evidence requires that the ALJ “ensure that the ap-
proximation is the product of a reliable method.” Id. A “pre-
cise count is not necessary,” but the VE’s testimony “must be
supported with evidence suﬃcient to provide some modicum
of conﬁdence in its reliability.” Id. at 822 (citation omitted). A
reliable methodology is based on “well-accepted sources.”
Ruenger, 23 F.4th at 763 (citation omitted). Additionally, the
VE must explain his methodology “cogently and thor-
oughly,” and this explanation must be suﬃcient to instill
some conﬁdence that the estimate was not “conjured out of
whole cloth.” Id. (citation omitted).
 During Fetting’s administrative hearing, the VE testiﬁed
that the numbers in the OES refer to groupings that encom-
pass “several occupations” and “report numbers.” He ex-
plained that, to convert the OES statistic into estimates for in-
dividual DOT occupations, he “look[ed] at the composition of
a[n] [OES] group” and, using his “knowledge of the labor
market, [acquired] over 30+ years of job placement activities,”
determined the relative prevalence of each job in that group.
As an example, the VE testiﬁed that “the cleaner/housekeep-
ing position is in a group with nine other DOT occupations,”
totaling 925,000 positions nationwide. Based on his experi-
ence, a “[c]leaner, housekeeping position is something that’s
found at many diﬀerent industries and that would be one that
would … make up a larger portion of the total group.” He
therefore concluded that there are about 200,000 jobs in the
national economy for cleaners/housekeepers.
10 No. 22-1901

 The VE’s testimony was suﬃciently cogent and thorough
for the ALJ to rely on it. To be sure, the VE could have ex-
plained his methodology more clearly, but he gave enough
detail for us to understand the sources of his data and the gen-
eral process he adopted. The VE explained that he used the
OES numbers and his thirty years of job placement experience
to calculate his estimates. See Chavez, 895 F.3d at 968 (7th Cir.
2018); Rennaker v. Saul, 820 F. App’x 474, 479 (7th Cir. 2020)
(holding that “a VE may draw from his expertise to provide a
reasoned basis for his job-number estimates”). And contrary
to Fetting’s contention, a VE is not required to use a market
study, computer program, or publication to make his calcula-
tions. See Liskowitz, 559 F.3d at 743 (noting that the VE does
not testify “as a census taker or statistician”); Chavez, 895 F.3d
at 968.
 Fetting makes numerous other objections to the VE’s
methodology, contending:
 We have no idea if he accounted for the RFC [residual
 functional capacity] when looking at the vaguely se-
 lected jobs within an OES code, whether he considered
 only jobs that were full-time, whether he eliminated
 part-time positions, how he determined how many of
 the BLS [Bureau of Labor Statistics] numbers were light
 versus medium or heavy in exertion, or how he deter-
 mined the numbers he provided during testimony.
Fetting forfeited these concerns by failing to ask any questions
about them at the hearing. See Liskowitz, 559 F.3d at 744 (not-
ing that if the claimant had made her objections at the hearing,
the VE could have said more on those speciﬁc issues). More
to the point, however, the VE was not required to provide
No. 22-1901 11

every detail of his calculations. See Ruenger, 23 F.4th at 763;
Bruno v. Saul, 817 F. App’x 238, 243 (7th Cir. 2020).
 Lastly, Fetting argues that remand is warranted because
the ALJ in this case “fail[ed] in his duty of inquiry” and did
not ask suﬃcient additional questions during the hearing to
determine whether the VE’s calculations were reliable. But the
VE’s testimony did not give the ALJ any reason to suspect that
his methodology was unreliable. As we said in Chavez, 895
F.3d at 970, the VE is permitted to support his approximation
by “drawing on knowledge of labor market conditions and
occupational trends, gleaned from … placing workers in
jobs.” This is exactly the methodology that the VE in Fetting’s
case stated that he used to calculate his estimates. Because the
VE’s explanation was cogent and thorough, the ALJ was not
required to seek further clariﬁcation.
 III. Conclusion
 Fetting did not object to the VE’s testimony at his hearing
and thus forfeited his challenges to the VE’s methodology. Re-
gardless, the VE properly based his estimates on reliable sta-
tistics and his professional experience and suﬃciently ex-
plained his methodology at the hearing. For these reasons, the
ALJ was permitted to rely on the VE’s testimony, and substan-
tial evidence supports the ALJ’s ﬁnding that Fetting could
perform work present in signiﬁcant amounts in the national
economy.
 AFFIRMED