In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 22-1970

MICHAEL A. LEISGANG,

*Plaintiff-Appellant,*

*v.*

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 3:21-cv-40 — **Barbara B. Crabb**, *Judge.*

---

ARGUED APRIL 11, 2023 — DECIDED JUNE 26, 2023

---

Before SCUDDER, ST. EVE, and LEE, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Michael Leisgang applied for Social Security benefits based on a number of conditions that he alleged left him disabled and unable to work. An administrative law judge denied his claim following an evidentiary hearing where a vocational expert testified that, despite his limitations, Leisgang could perform certain widely available jobs. Leisgang now claims that the ALJ should have done more to ensure the soundness of the vocational expert's methodology.

But he forfeited the issue by failing to object at the hearing. And because substantial evidence otherwise supports the ALJ's determination, we affirm.

**I**

Michael Leisgang suffers from depression, anxiety, and a personality disorder, among other conditions. He believes these impairments prevent him from working. So he sought supplemental security income as well as disability insurance benefits in 2019.

The ALJ held an evidentiary hearing and applied the familiar five-step test to determine whether Leisgang was disabled. See 20 C.F.R. § 416.920(a)(4); see also *Fetting v. Kijakazi*, 62 F.4th 332, 336–37 (7th Cir. 2023) (describing the five steps). The primary focus on appeal concerns the ALJ's analysis at the fifth and final step. The ALJ had concluded that Leisgang could perform the full range of work subject to several limitations. He could undertake only simple, routine, and repetitive work; he could not work at a rapid, production-rate pace; he could tolerate few changes in routine work settings; and he could interact only occasionally with supervisors, coworkers, and the public. Those limitations precluded Leisgang from performing his past work. So, at the fifth and final step of the analysis, the ALJ considered whether Leisgang could perform other jobs available in significant numbers in the national economy.

To answer the question, the ALJ sought assistance from a vocational expert. The VE testified that someone with Leisgang's limitations could work as a kitchen helper, sweeper/cleaner, or hospital cleaner. The VE estimated that there were meaningful numbers of each job across the

country. By his approximation, there were 309,000 kitchen helper jobs, 1,300,000 sweeper/cleaner jobs, and 453,000 hospital cleaner jobs nationwide. If these job titles seem unusual and outdated, that is because they are. The VE identified job titles using a dictionary published by the Department of Labor in 1977 and not revised since 1991. The Social Security Administration began working on a new resource in 2008, and the judiciary continues to await its release—indeed, eagerly so. See *Chavez v. Berryhill*, 895 F.3d 962, 965–66 (7th Cir. 2018) (emphasizing that the Social Security Administration is long overdue to develop a modernized, reliable, and data-driven system for estimating job numbers).

On cross-examination, Leisgang's attorney asked the VE how he came up with his job-number estimates. The VE said the primary data came from the Occupational Employment Quarterly, which applies the equal distribution method to estimate the distribution of job numbers within a larger group of occupations. See *id.* at 966 (discussing the equal distribution method). When Leisgang asked if the VE believed the equal distribution method was reliable, the VE reported that it was the only method he had available.

Leisgang asked no further questions about the VE's methodology. He never objected to the VE's methodology, either during the hearing or after. Nor did he offer anything (by way of argument or evidence) to suggest the VE's methodology might be unreliable.

The ALJ determined that Leisgang was not disabled and therefore denied him benefits. She found that Leisgang could—consistent with the VE's testimony and subject to identical occupational limitations—perform several jobs available in significant numbers across the country.

The district court affirmed the ALJ's decision. Leisgang now appeals.

## II

We will affirm an ALJ's factual findings so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is not a demanding standard. "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## A

Leisgang asks us to consider whether substantial evidence supports the ALJ's findings that there are meaningful numbers of jobs he can perform across the country. But Leisgang forfeited this issue by failing to object to the VE's methodology. We require parties to object to issues and preserve arguments for a reason—first and foremost, to ensure that all sides develop the record they wish to subject to appellate review. See *Hacker v. Dart*, 62 F.4th 1073, 1082 (7th Cir. 2023).

Our case law is clear that this principle holds true in the Social Security context. See *Fetting*, 62 F.4th at 337–38; see also *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) ("[The claimant] forfeited this argument by failing to object to the VE's testimony during the hearing."). As we explained in *Fetting*, a claimant must object to the VE's testimony or otherwise indicate that the testimony is unreliable during the administrative hearing (or after, in a posthearing brief) to preserve his objection. See 62 F.4th at 337. The claimant's objections, we emphasized, must also be specific enough to "indicate that [the claimant] believed the methodology was

unreliable." *Id.* at 338. General objections or vague questions about the VE's methodology are, without more, insufficient. See *id.*

*Fetting* makes good sense when we consider the nature of Social Security hearings. ALJs are tasked with resolving a large volume of cases, most of which are accompanied by lengthy, factually complex records. ALJs play a significant role developing the record and the facts—including by deciding whether to seek assistance from a VE on job-number estimates at the fifth step of the inquiry. See *Biestek*, 139 S. Ct. at 1152; *Richardson v. Perales*, 402 U.S. 389, 409–10 (1971).

What all this means as a practical matter is that the ALJ is better suited than we are to unpack and untangle objections and concerns regarding the VE's methodology in the first instance. And the ALJ is best positioned to do so when the claimant identifies those objections and concerns expressly, allowing the proper development of the evidentiary record in real time. For the same reasons, several other circuits generally require claimants to exhaust their arguments at the administrative level, with a limited exception for constitutional claims arising out of the Appointments Clause. See *Ramsey v. Comm'r of Soc. Sec.*, 973 F.3d 537, 545–47 (6th Cir. 2020) (collecting cases imposing a general exhaustion requirement from the First, Sixth, Eighth, and Ninth Circuits); see also *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) ("We now hold that when a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel.").

Be careful not to overread what we are saying. *Fetting* did not displace the ALJ's duty at step five to "hold the VE to

account for the reliability of his job-number estimates," *Chavez*, 895 F.3d at 970, or the general rule that a claimant cannot waive the substantial evidence standard, see *Biestek*, 139 S. Ct. at 1155. Nor did *Fetting* shift the burden of proof at this stage of the inquiry from the agency—where it belongs—to the claimant. See *Chavez*, 895 F.3d at 970.

Rather, *Fetting* stands for the limited principle that a claimant may not start objecting to unquestioned and uncontradicted VE testimony in federal court after the closure of the administrative record. See *Fetting*, 62 F.4th at 337 (citing *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016)). To be sure, the ALJ still cannot accept testimony from a VE that is facially implausible or incoherent. See *Brace v. Saul*, 970 F.3d 818, 822–23 (7th Cir. 2020).

But that does not describe Leisgang's situation. The VE testified that he used the Occupational Employment Quarterly, which applies the equal distribution method to estimate job numbers. No doubt we have sharply criticized the equal distribution method many times before. See *Chavez*, 895 F.3d at 966 (identifying the "illogical assumption" underlying the equal distribution method and its "distorting effects"). But nothing about the VE's testimony in this case indicated, by itself, that the ALJ could not put some "modicum of confidence" in the VE's job-number estimates. *Id.* at 969.

Leisgang therefore had to object or otherwise indicate that the VE's methodology was unreliable in order to flesh out and preserve the issue for our review. He failed to do so. Instead, he posed only a few general questions to the VE, none of them hinting the VE's methodology might be problematic. When the ALJ eventually cut off a different line of questioning directed to the VE, Leisgang did not register an objection for the

record before moving on. Consistent with *Fetting*, Leisgang cannot start questioning the VE's estimates now.

B

One final issue requires our attention.

Leisgang contends that the ALJ gave short shrift to reports submitted by two of his doctors. One of those doctors, Dr. Susan Donahoo, concluded that Leisgang would have "some difficulty following a schedule, working without being distracted by others and handling a normal workweek without symptoms." The ALJ found the report persuasive but did not adopt Dr. Donahoo's precise wording in characterizing Leisgang's limitations. As Leisgang sees it, that means that the ALJ "selectively" considered the report, requiring remand. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).

Not so. Far from disregarding portions of the report, the ALJ adopted the same essential limitations proposed by Dr. Donahoo. The ALJ credited Dr. Donahoo's determination that Leisgang would have moderate limitations associated with his mental disorders. More specifically, the ALJ agreed with the thrust of Dr. Donahoo's findings: that Leisgang could "perform[ ] simple work activity in a routine work setting, with some difficulty interacting with others." The ALJ then adopted limitations consistent with these findings. That was enough. Nothing required the ALJ to stick to the exact words that Dr. Donahoo used—words the ALJ rightly noted were "vague."

Substantial evidence also supports the ALJ's treatment of a report submitted by Dr. Wendy Yim, who opined that Leisgang needed "extreme" limitations and could not handle even low-stress jobs. The ALJ properly concluded that Dr.

Yim's own past treatment notes, where she concluded Leisgang's mental status examinations were unremarkable, contradicted her findings in her subsequent report. See *Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021) (explaining an ALJ can discount a treating physician's opinion that is "inconsistent with other objective evidence in the record").

That was not the only evidence undercutting Dr. Yim's opinion: the ALJ summarized treatment history showing Leisgang's mental health had markedly improved over time. And Leisgang himself testified at the hearing that his psychotropic medications generally controlled his symptoms. On this record, we cannot find fault with the ALJ's conclusion that Dr. Yim's opinion was unpersuasive.

Seeing no error, we AFFIRM.