In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 23-1196

KELLY J. CHAVEZ,

*Plaintiff-Appellant,*

*v.*

MARTIN J. O'MALLEY,
Commissioner of Social Security,

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 1:22-cv-00062-WCL — **William C. Lee**, *Judge.*

---

ARGUED DECEMBER 5, 2023 — DECIDED MARCH 22, 2024

---

Before HAMILTON, BRENNAN, and ST. EVE, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Kelly Chavez has suffered from various mental and physical impairments for many years. After she was denied supplemental security income, an administrative law judge conducted a hearing at which a vocational expert testified. The ALJ found that Chavez could perform

jobs that existed in significant numbers in the economy and affirmed the denial. The district court affirmed the ALJ's findings. Chavez contends that the vocational expert did not provide substantial evidence in support of the ALJ's decision, but we disagree and affirm.

## I. Background

Chavez applied for supplemental security income in 2019, asserting she had been disabled since 2007. Her application was denied initially and on reconsideration. She requested and received a hearing before an ALJ in 2020 during which she objected to the reliability of a vocational expert's testimony about job number estimates. The ALJ agreed that the estimates were not reliable and ordered a supplemental hearing.

### A. The Supplemental Hearing

Chavez and a new vocational expert, Sarah Holmes, testified at the April 2021 supplemental hearing. Holmes has served as a vocational expert witness in Social Security matters since 2018 and has board certifications as a Certified Rehabilitation Counselor and Licensed Professional Counselor. Chavez's counsel did not object to Holmes's qualifications.

Holmes testified that a person with Chavez's age, background, and ability to perform a reduced range of light work would be able to perform several light exertion jobs, including cleaner, office helper, and storage rental clerk. She provided a corresponding number from the Dictionary of Occupational

Titles ("DOT") for each occupation.[1] Holmes estimated those occupations existed in the following numbers in the national economy: 222,000 cleaner jobs, 14,000 office helper jobs, and 63,000 storage rental clerk jobs. Holmes explained that those jobs were examples, not an exhaustive list, and she testified that there were another 24,700 representative jobs that Chavez could perform at the sedentary level.

After Holmes testified, Chavez's counsel asked her how recent the national-job numbers were. Holmes said she used the most recent available data, which was from 2021. She explained that she used a software program, Job Browser Pro, to estimate the number of jobs. That program uses data from the Bureau of Labor Statistics to provide job numbers by DOT title. Chavez's attorney then questioned Holmes:

Q: So, tell me what formula … Job Browser Pro uses to weight the numbers in the [Standard Occupational Classification ("SOC")] codes, to weight the DOT categories and the SOC codes?

A: Now, I would have to read that specifically from the information that I have here. I can't tell you exactly off hand that particular data.

Q: So, the answer is that you're sitting there, you don't know, is that correct?

A: As I'm sitting here right now, correct. I could read the summary and abstract for SkillTRAN

---

[1] DOT 323.687-014, 1991 WL 672783 (cleaner, housekeeper); DOT 239.567-010, 1991 WL 672232 (office helper); and DOT 295.367-026, 1991 WL 672594 (storage rental clerk).

estimating employment numbers, which I have in front of me, but I don't know it just off the top of my head.[2]

Chavez's attorney did not ask Holmes to read the summary and began a new line of questioning.

Chavez's counsel objected to the reliability of Holmes's testimony, including:

- That it was insufficient because she "cannot describe the weighing formula from Job Browser Pro";

- Any "top down weighing methodology" could not be reliable given the "mismatching of the SOC codes and the DOT codes"; and

- Unless there was a rational way of severing the different skill and exertional levels within the SOC codes, "any weighing of a DOT title within a SOC code cannot yield a reliable result."

The ALJ considered those objections and asked Holmes clarifying questions. Holmes explained that, in Job Browser Pro, jobs "are broken out by DOT title and not by SOC code." When asked if other vocational experts use Job Browser Pro,

---

[2] SkillTRAN is the company that produces the Job Browser Pro software. *See Job Browser Pro*, SKILLTRAN LLC, https://skilltran.com/index.php/products/pc-based-solutions/job-browser-pro (last visited March 22, 2024).

The document that Holmes referenced is publicly available. *See* SKILLTRAN LLC, SKILLTRAN PROCESS FOR ESTIMATING EMPLOYMENT NUMBERS 1–10 (2020), https://skilltran.com/pubs/DOTempnum_method.pdf.

Holmes responded: "I'm not saying other people don't use other things, but every person that I know that does this work, uses, relies upon Job Browser Pro."

Chavez's counsel then asked Holmes if "Job Browser Pro uses a formula in order to weight DOT title occupations that exist within a SOC code, in order to reach their number for the DOT title." Holmes confirmed that was correct. Chavez's attorney did not pose any more questions about the formula.

**B. The ALJ's Decision**

In August 2021, the ALJ ruled that Chavez was not disabled and denied Chavez's application for supplemental security income. Applying the familiar five-step process set forth in 20 C.F.R. § 416.920, the ALJ found that Chavez had numerous severe impairments. Those include migraine disorder, asthma, lumbar and cervical degenerative disc disease, neuropathy of the left leg, acoustic neuroma, obesity, social anxiety disorder, generalized anxiety disorder, depressive disorder, and attention deficit hyperactivity disorder. The ALJ also deemed Chavez to have the residual functioning capacity to perform light work as defined in 20 C.F.R. § 416.967(b), with specific exceptions. The ALJ concluded that Chavez could not perform her past work, but that she could perform jobs existing in the national economy such as cleaner, office helper, and storage rental clerk.

The ALJ overruled Chavez's objections to Holmes's testimony:

> The vocational expert was found to be a qualified expert by this agency, and [Chavez's] counsel agreed to this prior to her testimony. The vocational expert stated that the jobs she offered

were not an exhaustive list of possible jobs that would satisfy the hypothetical and that her job numbers were based on numbers given by the [Bureau of Labor Statistics] and JobBrowser Pro, which gives the number of jobs by the DOT code. The vocational expert testified that this is standard procedure among the vocational experts she knows. … [B]ased on careful consideration of the totality of the record, the [ALJ] finds the testimony of the [v]ocational [e]xpert conforms to the rules and regulations of the Social Security Administration and is therefore accepted.

Chavez appealed, and the Appeals Council denied review. She then sought judicial review.

### C. The District Court's Decision

The district court affirmed the ALJ's findings. Because Holmes identified the source for her job number estimates, offered to provide additional information on the underlying data source, and gave a straightforward explanation for the reliability of the numbers she provided, the district court concluded that the ALJ's decision was supported by substantial evidence. So, the district court granted judgment for the Commissioner.

On appeal, Chavez asks us to conclude that Holmes's testimony is unreliable, and that substantial evidence does not

support the ALJ's finding that Chavez could perform jobs that existed in significant numbers in the economy.[3]

## II. Discussion

This court reviews de novo the district court's judgment affirming the Commissioner's decision. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). But we "apply a deferential standard of review when assessing the ALJ's decision." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus*, 994 F.3d at 900. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner*, 478 F.3d at 841 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If substantial evidence supports the ALJ's conclusions, the court "must affirm the ALJ's decision even if reasonable minds could differ about the ultimate disability finding." *Brown v. Colvin*, 845 F.3d 247, 251 (7th Cir. 2016).

### A. Statutory and Regulatory Framework

To establish disability, a claimant must show that he or she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner utilizes a five-step sequential evaluation

---

[3] This court has appellate jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. §§ 405(g), 1383(c)(3).

process to determine whether a claimant can engage in substantial gainful activity. 20 C.F.R. § 416.920; *see Weatherbee v. Astrue*, 649 F.3d 565, 568–69 (7th Cir. 2011).

Only step five of the disability evaluation process is at issue here: whether Chavez could perform jobs that existed in significant numbers in the economy. At the fifth step, the Commissioner bears the burden to establish that the claimant—considering age, education, job experience, and functional capacity to work—can perform other work and that such work exists in the national economy in significant numbers. 20 C.F.R. §§ 416.912(b)(3), 416.920(g), 416.960(c); 42 U.S.C. § 1382c(a)(3)(B). If the claimant is unable to make an adjustment to other work, she will be found disabled. 20 C.F.R. § 416.920(g).

**B. Step Five and the Vocational Expert's Testimony**

ALJs commonly rely on vocational experts to provide "an impartial assessment" of the (1) "types of occupations in which claimants can work" and (2) "availability of positions in such occupations." *Weatherbee*, 649 F.3d at 569 (citing *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009)). Vocational experts are experienced in job placement and typically hold advanced degrees in vocational rehabilitation or psychology. *Sok v. Kijakazi*, No. 21-3039, 2022 WL 17413558, at *1 (7th Cir. Dec. 5, 2022). To make their assessment, vocational experts may rely on a variety of sources and tools, as well as their knowledge of the job market, experience placing individuals in jobs, and surveys of employers. *Biestek v. Berryhill*, 587 U.S. ---, 139 S. Ct. 1148, 1152–53 (2019).

The Social Security Administration uses the DOT to categorize occupations. *Fetting v. Kijakazi*, 62 F.4th 332, 337 (7th

Cir. 2023). Once a vocational expert determines the types of occupations in which a claimant can work, the expert provides the corresponding DOT number. *Id.* But the DOT does not provide job numbers for each occupation. So vocational experts convert job numbers from the Bureau of Labor Statistics—which uses the SOC system—to the DOT system. *Id.* There are widely used, commercially available resources that help with this conversion process. One is the Job Browser Pro software. *See Chavez v. Berryhill*, 895 F.3d 962, 966 (7th Cir. 2018).[4]

When an ALJ bases a decision on the testimony of a vocational expert, the substantial evidence standard requires the ALJ to "ensure that the [vocational expert's job number estimate] is the product of a reliable method." *Fetting*, 62 F.4th at 339 (citing *Brace v. Saul*, 970 F.3d 818, 821 (7th Cir. 2020)). A "precise count is not necessary," but the vocational expert's testimony "must be supported with evidence sufficient to provide some modicum of confidence in its reliability." *Id.* (citing *Brace*, 970 F.3d at 822). "[A]ll the substantial evidence standard requires" is that a vocational expert "gave enough detail for [the Court] to understand the sources of his data and the general process he adopted." *Hohman v. Kijakazi*, 72 F.4th 248, 254 (7th Cir. 2023) (quoting *Fetting*, 62 F.4th at 339).

---

[4] Chavez previously applied for supplemental security income in 2010. In *Chavez v. Berryhill*, this court vacated and remanded for further proceedings. 895 F.3d 962, 966 (7th Cir. 2018).

The administrative decision on appeal here concerns only Chavez's 2019 application and is not related to the proceedings on remand following her previous case.

This "case-by-case" inquiry considers "all features of the [vocational expert's] testimony" to determine whether the testimony establishes "'more than a mere scintilla' of evidence supporting the ALJ's conclusion." *Hohman*, 72 F.4th at 252 (citing *Biestek*, 139 S. Ct. at 1156–57). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. But a critical aspect of the vocational expert's job estimation process is how that expert matches general economic data reported in SOC codes to specific DOT numbers used by the agency. *See Ruenger v. Kijakazi*, 23 F.4th 760, 761–62 (7th Cir. 2022) ("This creates a matching problem … ."); *Brace*, 970 F.3d at 820–21 ("Because the database of job titles is so outdated, an expert's methodology for connecting job titles to reliable estimates of the number of jobs for each title is especially important.").

*1. The vocational expert provided reliable testimony.*

Here, the ALJ could "readily trace the path of [Holmes's] reasoning" for her job number estimates. *Hohman*, 72 F.4th at 253. Holmes testified that Job Browser Pro used 2021 data from the Bureau of Labor Statistics to provide the most recent job numbers. She explained that by providing job numbers by DOT title, rather than SOC code, Job Browser Pro was able to exclude numbers from occupations that did not fit Chavez's situation. In response to questioning from Chavez's counsel, Holmes identified the SOC codes that corresponded to each of the DOT titles she listed as suitable for Chavez, and the exertional and skill levels of all the DOT titles that fell under each SOC code. *Cf. Ruenger*, 23 F.4th at 763 (remanding where the vocational expert "obscured the origin of her job estimates and even denied the most likely source—SOC codes.").

Holmes also described how Job Browser Pro worked. She confirmed that the software used a formula to weigh the DOT occupations within a SOC code in order to reach their number for the DOT title. She even offered to provide detailed information about Job Browser Pro's underlying formula: "I could read the summary and abstract for SkillTRAN estimating employment numbers, which I have in front of me… ." But Chavez's counsel did not accept her offer and moved to another line of questioning: "Okay. Let's look at the cleaner job." After considering objections by Chavez's counsel, the ALJ asked Holmes additional questions clarifying how Job Browser Pro separated jobs and confirming that many vocational experts use the software.

So, Holmes did provide substantial evidence and the ALJ appropriately relied on her testimony. Even if Holmes had not explained her method in detail, it was enough of a "reasoned and principled explanation" to meet the low substantial evidence threshold. *Chavez*, 895 F.3d at 970.

The jobs Holmes identified and the ALJ ultimately relied on—cleaner, office helper, and storage rental clerk—are prevalent within the national economy. Chavez "cannot credibly argue" that these jobs, which are "commonly found in the national economy," do not exist in significant numbers. *Sok*, 2022 WL 17413558, at *2. To avoid foreclosing the claimant from disability benefits on "the basis of the existence of a few isolated jobs," the vocational expert must show that the jobs exist in significant numbers. *Walker v. Mathews*, 546 F.2d 814, 819 (9th Cir. 1976); *see Sok*, 2022 WL 17413558, at *2. This is satisfied by the common nature of the jobs and supports the ALJ's reasonable reliance on her testimony.

Holmes also testified that every vocational expert she knows relies on Job Browser Pro. Her reliance on a source that is "well-accepted" in her field supports her opinion. *See Biestek*, 139 S. Ct. 1155; *Bruno v. Saul*, 817 F. App'x 238, 241, 243 (7th Cir. 2020) (affirming vocational expert testimony based on the "SkillTRAN approach"); *Purdy v. Berryhill*, 887 F.3d 7, 14, 16–17 (1st Cir. 2018) (affirming and describing Job Browser Pro as "widely relied upon by vocational experts in estimating the number of relevant jobs in the national economy").

Holmes's testimony was also reliable for other reasons. She served as a vocational expert in Social Security proceedings for three years. She confirmed that her resume—which shows education including a Master of Science in rehabilitation psychology and more than two decades of professional experience as a vocational consultant—accurately reflected her professional qualifications. She also testified that, as part of her education and training, she took statistics classes and conducted population surveys. So, she had "top-of-the-line credentials, including professional qualifications and many years' experience." *Biestek*, 139 S. Ct. at 1155, 1153 (affirming ALJ's denial of benefits after relying on testimony of vocational expert with five years' experience in Social Security proceedings and ten years' experience counseling those with disabilities about employment opportunities).

Chavez submits that Holmes did not explicitly tie her professional experience to her job number estimates. But a vocational expert need not do so for her testimony to constitute substantial evidence. In *Biestek*, the Court recognized a vocational expert's qualifications based on his resume. *See id.* at 1153. The ALJ's findings about job number estimates, which were based on that expert's testimony, were affirmed. *Id.* at

1157. That standard is satisfied here because the ALJ questioned Holmes about her resume and experience and specifically inquired about her job estimates and methodology. And although not Chavez's burden, she simply did not offer any evidence conflicting with Holmes's opinion on the jobs she could perform and their existence in substantial numbers in the economy.

In sum, the ALJ relied on vocational expert testimony from an undisputed expert in the field who:

- used a generally accepted source of job numbers;

- provided a straightforward overview of how the source worked;

- offered to provide additional information about the source's underlying formula;

- provided additional details about the jobs she selected in response to the claimant's questions; and

- identified jobs commonly found in the national economy.

The expert "gave enough detail for [the Court] to understand the sources of h[er] data and the general process [s]he adopted." *Hohman*, 72 F.4th at 254 (quoting *Fetting*, 62 F.4th at 339). The ALJ therefore satisfied the Commissioner's "modest evidentiary burden." *Sok*, 2022 WL 17413558, at *2.

*2. The underlying formula need not be explained.*

Chavez argues that Holmes's evidence is less than substantial because she did not explain Job Browser Pro's underlying formula. Holmes consulted Job Browser Pro to obtain

job number estimates which, Chavez concedes, is a generally accepted methodology. But in Chavez's view, the lack of an explanation is "conclusive proof" that Holmes's testimony is unreliable and that therefore the ALJ's conclusion was not supported by substantial evidence.

We reject this argument for three reasons.

First, Chavez's position is contrary to the Supreme Court's holding in *Biestek* that categorical rules regarding the substantiality of a vocational expert's opinion are inappropriate. *Biestek*, 139 S. Ct. at 1157. There, the claimant petitioned the Supreme Court to adopt a categorical rule precluding a vocational expert's testimony from qualifying as substantial evidence if the expert declined a claimant's request to provide supporting data. *Biestek*, 139 S. Ct. at 1153–54. The Court rejected that request and held that the inquiry in determining substantiality of evidence must be case-by-case. *Id.* at 1157. Adjudicators should evaluate the entirety of a vocational expert's testimony. Even if an expert refused to provide the underlying data, the expert's testimony could still constitute substantial evidence if it had other markers of reliability. *Id.* at 1156–57.

As in *Biestek*, Chavez's request for a categorical rule is inappropriate. A vocational expert's testimony is not precluded simply because the expert did not describe the underlying formula of the resource relied upon. Instead, the court looks at the expert's testimony as a whole and the specific facts of this case. As discussed above, Holmes's testimony has sufficient indicia of reliability to clear the low substantial evidence threshold.

Second, Chavez's argument runs counter to this court's law recognizing that a vocational expert is not required to explain the statistical basis for the sources on which she relies. In *Liskowitz*, this court ruled that the ALJ was entitled to rely on a vocational expert's testimony despite the expert's admission that she could not assess the degree of accuracy of the underlying data sources on which she relied. 559 F.3d at 743. Even so, the vocational expert explained that her sources were widely recognized as acceptable in the vocational rehabilitation field. *Id.* The court emphasized that "[t]he witness was testifying as a vocational expert, not a census taker or statistician." *Id.*; *see Hohman*, 72 F.4th at 254 (reiterating that vocational experts need not "provide exact data or calculations"); *see also Fetting*, 62 F.4th at 339–40. And, in *Bruno*, the court affirmed the ALJ's reliance on vocational expert testimony using the "SkillTRAN approach," even though the expert "did not reveal the precise mechanics and statistical model involved." 817 F. App'x at 243; *see also Case v. Kijakazi*, No. 22-2379, 2023 WL 4882880, at *3 (7th Cir. Aug. 1, 2023) (holding that "[t]he inability of the vocational expert to precisely explain the software's algorithms does not render his explanation unreliable").

Chavez relies on *Westendorf* to argue that remand is needed because the vocational expert did not sufficiently explain Job Browser Pro's underlying formula. But in *Westendorf*, claimants' counsel did not decline the vocational expert's offer to provide details about the program's underlying methodology as Chavez's counsel did here. *Westendorf v. Saul*, No. 19-cv-1019, 2020 WL 4381991, at *1–2 (W.D. Wis. July 31, 2020) (the vocational expert promised to provide a document discussing Job Browser Pro's methodology after the hearing, counsel made a conditional objection to the testimony

pending review of the document, and counsel raised post-hearing objections specific to the methodology described).

Third, Holmes was willing to provide the very information Chavez complains is missing from the record—details regarding Job Browser Pro's methodology—but Chavez's counsel did not pursue the matter. Vocational experts are encouraged, but not required, to have underlying sources available at the hearing. *Krell v. Saul*, 931 F.3d 582, 586–87 (7th Cir. 2019) (citing *Biestek*, 139 S. Ct. 1157). Here, Holmes was prepared to provide further detail. As the district court explained, Chavez "cannot decline an offer of information and then object that the information was not recited into the record."

> *3. The ALJ properly considered whether the vocational expert's evidence was cogent and thorough.*

Chavez now criticizes the ALJ for not seeking out the explanation that her attorney declined. But where a vocational expert's testimony was sufficiently "cogent and thorough" and "did not give the ALJ any reason to suspect that his methodology was unreliable," the ALJ is "not required to seek further clarification." *Fetting*, 62 F.4th at 340. As *Fetting* stated, a "reliable methodology is based on well-accepted sources." *Id.* at 339 (quotations omitted). Here, Holmes testified "every person" she knew that "does this work, uses, relies upon Job Browser Pro."

*Fetting* ruled that a vocational expert's explanation "must be sufficient to instill some confidence that the estimate was not conjured out of whole cloth." *Id.* (quotations omitted). There, the vocational expert used "a simple formula … not a hard and fast scientific type formula" and did not conduct any

"formal analysis." *Id.* at 336 (quotations omitted). But the court found the vocational expert's testimony "sufficiently cogent and thorough for the ALJ to rely on it." *Id.* "To be sure, the [vocational expert] could have explained his methodology more clearly, but he gave enough detail for us to understand the sources of his data and the general process he adopted." *Id.* Holmes did that and more. She testified as to how Job Browser Pro uses data from the Bureau of Labor Statistics to provide job numbers, offered to provide SkillTRAN's description of the formula Job Browser Pro uses, and clarified how Job Browser Pro separated jobs by DOT title.

We have spoken to the reliability of the authority a vocational expert can use and still be deemed to have presented substantial evidence. In *Leisgang v. Kijakazi*, 72 F.4th 216 (7th Cir. 2023), an ALJ credited the testimony of a vocational expert who relied on a publication that applied the equal distribution method to estimate job numbers. *Id.* at 220. The ALJ denied Social Security benefits. *Id.* at 219. When "asked if the [vocational expert] believed the equal distribution method was reliable, [he] reported that it was the only method he had available." *Id.* at 219. The court in *Leisgang* recognized the sharp criticisms of the equal distribution method, and cited law "identifying the 'illogical assumption' underlying the equal distribution method and its 'distorting effects.'" *Id.* at 220 (citing *Chavez*, 895 F.3d at 966). Still, the court affirmed the ALJ's denial based on the vocational expert's testimony. *Id.*

Like in *Leisgang*, "nothing about [Holmes's] testimony" indicated "that the ALJ could not put some modicum of confidence in the [her] job-number estimates." *Id.* at 220 (quotations omitted). By declining to pursue Holmes's offer to provide further detail about her source's methodology, Chavez

failed to "give the ALJ any reason to suspect that h[er] methodology was unreliable." *Fetting*, 62 F.4th at 340. Chavez's questions established only that Holmes could not explain Job Browser Pro's formula without consulting her source. But that does not make her testimony unreliable. And it does not prove that "Job Browser Pro was simply a black box to the vocation expert." *See Westendorf*, 2020 WL 4381991, at *3.

> ### 4. The ALJ properly considered and overruled Chavez's objections.

Chavez says the ALJ did not sufficiently follow up on her objections. But *Leisgang* explains that an ALJ is better able to "unpack and untangle objections and concerns" about the vocational expert's testimony. *Leisgang*, 72 F.4th at 220. "And the ALJ is best positioned to do so when the claimant identifies those objections and concerns expressly, allowing the proper development of the evidentiary record in real time." *Id.*

In her principal brief, Chavez says she made a "direct objection about how the methodology allocates data from SOC codes to DOT codes, the most critical component of an estimation methodology." But it is unclear to what "direct objection" Chavez refers. Chavez's attorney objected to "any top down weighing methodology" and asserted that "any weighing of a DOT title within a SOC code cannot yield a reliable result" But these complaints are not specific to Job Browser Pro's statistical methodology or to Holmes's use of data from that program. And after Chavez's counsel lodged these objections, the ALJ asked follow-up questions to confirm that Job Browser Pro could weed out jobs that were inconsistent with the limitations in the hypothetical question and that the program is widely relied upon in the vocational expert field.

If Chavez is suggesting her objections should have prompted the ALJ to ask additional questions, we disagree, as her attorney's objections did not give the ALJ any reason to believe that Holmes's testimony might be unreliable. *See Fetting*, 62 F.4th at 340; *see also Leisgang*, 72 F.4th at 220–21. The substantial evidence standard is "'not high,'" *Fetting*, 62 F.4th at 338 (quoting *Biestek*, 139 S. Ct. at 1154), and, for the reasons explained, Holmes's testimony satisfies it.

Finally, Chavez criticizes the ALJ's reasons for overruling her objections to Holmes's testimony. Agency guidance directs ALJs to "[r]ule on any objection(s)" to a vocational expert's testimony by addressing them "on the record during the hearing, in narrative form as a separate exhibit, or in the body of his or her decision." SSA, *Hearings, Appeals, and Litigation Law Manual* I-2-6-74 (June 16, 2016). The ALJ did that. Although Chavez believes the ALJ wrongly overruled her objections, she has not shown that the ALJ was required to do anything further to address them.

### III. Conclusion

Holmes's vocational expert testimony provided substantial evidence for the ALJ's finding that Chavez could perform jobs that existed in significant numbers in the economy. The ALJ's decision aligns with this court's precedent on this question, and the ALJ appropriately addressed Chavez's objections.

For these reasons, we AFFIRM the district court.